The first case today is number 171706 United States v. Gadiel Romero. Good morning. May it please the court. The defendant appellant, Gadiel Romero, appeals his sentence of 276 months, fully 23 years, in a federal prison on the grounds that it was both procedurally and substantively unreasonable. And we've also raised in our brief for purposes of preservation of the issue, a challenge to the length of the sentence under the cruel and unusual punishment provisions of the United Mr. Romero's sentence was procedurally defective for a number of reasons. But the overarching reason that it was procedurally unreasonable is that the district court failed to properly calculate Mr. Romero's guidelines at sentencing. Instead, the court merely adopted the finding of the U.S. Probation Department that the applicable guideline range was 360 months to life, and indicated that the court would not consider, or not that the court would not consider, but move past the objections raised by Mr. Romero through counsel to the PSR by indicating Isn't it fair to say that the only thing that really gives you a shot here is whether we agree that the sixth level enhancement was procedural error? Because if we leave the other two employees, you're still with the same guideline range. I think so, Your Honor, but I have sort of two responses to that. Partially, yes, I think that the sixth level enhancement is a significant factor here, because if you take the sixth level enhancement, it changes the guideline sentencing range. If you take the totality of the objections and the sixth level enhancement, it drops the range actually below what the district court judge imposed for a sentence, thinking that the court was departing or varying downward from the 360 to life range. So all of them together are significant. I would argue that the calculation of the actual guidelines is important, that happening to land on 360 to life, but at the wrong offense level, or perhaps at the wrong criminal history level, still is significant. The guidelines are meant to be a framework, the benchmark, the important benchmark from which all other determinations, departures and variances, originate. And so a sentencing court that believes that somebody is at a 360 to life as a level 42 and seeks to vary downward may look at the sentencing guidelines table and see that a downward variance still results in 360 to life. But if that offense level is correctly calculated at a 38, that downward variance may bring that individual in the sentencing court's mind to a lower sentence. Do you have any authority for that proposition? I understand it, and I can see the potential logic of it, but when I look at Gaul, Gaul seems to refer to the phrase calculating the guideline sentencing range, which you can see the potential problem for you with putting it that way, because the range doesn't change. Though maybe the process of calculating it was erroneous. Here we also have some case law that has found a guidelines calculation finding about offense level to be harmless, because the error in determining whether that answer applied or not didn't affect the range. So if it's harmless in that setting, where there was actually an erroneous finding, how could it be anything other than harmless here, where there simply was no finding at all, rather than an erroneous one? Well, I think the argument would be that procedural reasonableness requires that there be that calculation. And so here, I understand the concern. I think it's a – I understand what the question is. Is there no authority that – is there any case in any circuit, including ours, that holds that there can be a Rule 32 violation for a failure to make a finding on a disputed issue concerning offense level, when the offense level, no matter how – that enhancement, no matter how it came out, would not affect the range? I'm not aware of one, Your Honor. Are you aware of any – is there any case dealing directly with that issue that is against you? That I'm not aware of either, Your Honor. Our argument is based on the principle that the totality of the circumstances is what the court looks at in the context of assessing whether or not a sentence is reasonably imposed. And our position is that that sentence guideline calculation is meant to be done correctly. And I think that that also dovetails with the other portion that the court has raised, which is the six-level enhancement for the ransom demand. And when you combine those together, the significance of the failure of the court to accurately calculate the offense level for the objected-to provisions has a more profound impact. I'm puzzled because why do you need to combine them? If you're right on the enhancement was improper, doesn't that get you a different guideline range itself? The six-level enhancement, Your Honor? Yes, it does. But if you don't have that, then you're back to the problem that Judge Barron was asking you about. Right, but I think that they inform each other because that... They don't inform each other if you're right on the enhancement. Perhaps. But I think it illustrates the importance of an accurate calculation and not just a finding of a guidelines range that happens to be accurate. It only illustrates in the case where it would affect the range. But once it's affected the range, you get a new sentence anyway. I think this court could find that the requirement is that the guidelines be accurately calculated because of the impact that that calculation has as a starting point, as this court has repeatedly said. As Judge Barron said, we've dealt with cases in the past where we found error to be harmless. We're sort of stuck with our precedent, aren't we? I appreciate that, Your Honor. Perhaps I'll move on then to the issue of the six-level enhancement, which I think does change the guidelines range. In addressing that, I guess my hang-up on that point is that because we don't have any specific case law here and you're relying on out-of-circuit precedent and because there was no objection, we've got this pretty significant plain error barrier, which usually we say that if there's no authority, then it can't be plain error. Your Honor, the Reynolds case that I cited to is a Seventh Circuit case. As I pointed out, it relies on First Circuit precedent. And that First Circuit precedent is an assessment of a provision under 2A4.1B. It happens to be D6 instead of B1, which applies here. But the same principles apply. And in that case, the First Circuit case, this Court held that there had to be some third-party involvement. Further, I would point out that the Reynolds Court, in determining that there needs to be a ransom made on a third party, was looking at the text of the statute, I mean of the guidelines itself, as a primary means of determining what the requirement was. The Seventh Circuit went through a fairly detailed discussion of that guidelines provision, indicating that there's a ransom demand or a demand on the government. The demand on the government, quite clearly, is a demand on a third party. The Seventh Circuit reasoned that that means that a ransom demand by the text of the guidelines itself, which applies here, required that there be third-party involvement. And the Seventh Circuit said that... It's not all that convincing a point, though, is it? I think that... I just didn't follow. Is it true that a ransom demand on a government is a demand on a third party? But I just didn't follow why the fact that that's identified in the guidelines shows that a ransom demand can only be against a third party. I think that the... Well, the Seventh Circuit, I think, explained it by saying that we have the First Circuit saying that there needs to be third-party involvement under subsection 6. The text suggests that the ransom demand be made, and it's in the same provision as the ransom demand being made on the government. The Seventh Circuit further noted that the provision pertains to the Hostage Taking Act, which also requires that the hostage be taken for purposes of influencing a third party, and determined that when you look at the full scope of the purpose and the application of that guideline, that it applies to ransom demands being made only to a third party. And the Seventh Circuit noted that it had looked and found not a single case where that enhancement had been applied to a defendant where the ransom hadn't been made to a third party. You say purpose. Help me understand. Why would the guideline drafters have wanted to say, if I kidnap you and demand your wife send some money, that's covered. But if I demand that you have your wife send some money out of your account, oh, okay, we're not going to enhance that. Why? Your Honor, I think that the Seventh Circuit addressed that, and they pointed out that this demand on a third party adds sort of a new victim to the crime. I see that my time has expired. May I finish my response? Please do. The Seventh Circuit indicated that the ransom demand on a third party creates a new victim, in essence, a person who's worried about the person who's been taken as a hostage or abducted, could create rescue, perhaps in circumstances like where you have an abduction of a member of a drug street dealing group, and that it leads to an increased potential for violence or other harm and warrants the enhancement for that reason, that significant six-point enhancement. Thank you. Good morning, Your Honors. May it please the Court, Alexia DeVincentis on behalf of the United States. Good morning. I'd like to begin, if I may, by just briefly addressing the argument that Romero makes in support of his goal-based claim. Romero attempts to argue that he could prevail on that claim because if he had prevailed on either or both of the disputed enhancements, he would have landed somewhere on the guideline sentencing chart that was closer to something less than 360 months to life. But importantly, as the defendant concedes, there doesn't appear to be any case law in support of that proposition. In fact, I would point this Court to its recent decision from 2015 in Vasquez-Lerari, where this Court, I think, tacitly rejected the notion that a less bad version of the same guidelines range could impact a defendant's sentence, when it found that there was no clear or obvious error, or excuse me, where it found that despite a clear and obvious error in the district court's calculation of a drug quantity determination. Isn't the thread in those calculation cases that it's important to correctly calculate the guideline range, because that range in and of itself has an influence on the court's thinking when it's trying to impose the appropriate sentence? Yes, Judge Johnson, I think that's exactly right. But importantly, there's no claim here that the district court incorrectly calculated the guideline sentencing range in the sense that it landed on something other than what that appropriate range was. I think if you look at the chart... I think the thread is that there's two possibilities. One, this is an incredibly elaborate scheme that the Sentencing Commission has set up. It takes tons of time to figure out all these different enhancements. There's all these charts. They do a lot of work. They're constantly thinking about it. And ultimately, we don't care about any of it as long as you get the range right. And the alternative is sort of like sixth grade math. It matters how you show your work. Because we want the judge, in thinking about the sentence, to be aware of exactly who this defendant is, what they did, and how their actual conduct looks relative to other people's. And then you might think the Sentencing Commission says, OK, now there's a range. People that are offense level 32 through 36, here's the range of the sentence you could give. You could be at the high end of that range. You could be at the low end of that range. It does seem like there's a certain logic that in making the judgment on where to place the person in the range, the judge should be thinking about all the work it did to identify that range so that it knows, well, this person is somebody who obstructed justice versus that person is somebody who didn't. And it just seems odd that we wouldn't think an error on that score is of any import. I think, as Your Honor noted in questioning defense counsel, the case law pretty much invariably focuses on the range itself, not the particular combination of inputs that... But is there any case rejecting a Rule 32 argument of this kind? I haven't been able to find one. I am not aware of any either. But again, I would point this Court to Vasquez-Lowry. I would also note the various cases... Is that a plain error case? It was not a plain error case. But I think importantly there, this Court found that there was no need to remand where there had been a clear error in the district court's drug quantity determination that resulted in a total offense level of 50 as opposed to 44 before adjusting downward to the maximum of 43. I think that case tacitly rejects the notion that simply being, for lack of a better way to put it, being somewhere in the form of a less bad version of the same GSR is reversible error. I think also here, even... the criminal history category, any error would be harmless, not just for the reason that it didn't impact the guideline sentencing range, but also for the reason that the view of those disputed enhancements that the district court effectively adopted by checking that box on the Statement of Reasons was well supported by the record. Just so I get the analytics of it, there's two possibilities. One, there's no Rule 32 error, because Rule 32 only treats it as an error when the error concerns the range. Right? So the alternative is there was a Rule 32 error, but the error is harmless because it didn't affect the range. As I read the text of Rule 32, I can't tell when it refers to... concerning the sentence? Correct, correct. So this isn't a matter concerning the sentence, it's on the plain text of it. Well, I think actually... I couldn't tell... Are you saying that actually there's just no Rule 32 problem because it doesn't affect the range, or do we actually have to do a harmless error analysis? Well, I'm arguing both in the alternative. I think first, there is no Rule 32 violation here. Again, the text of Rule 32, as you know, refers to a sentence, and what we're talking about here isn't a sentence in the terms of the defendant's term of imprisonment or supervised release or conditions of supervised release, but rather... That's equally true of the range being wrong. Excuse me? That's equally true of the range being wrong. I think in the case of a range, though, it's very clear from this Court's precedent, Supreme Court precedent, that the range serves as the starting point for a calculation of the sentence and thereby directly impacts the defendant's sentence. What we're talking about here are enhancements that didn't impact the sentence at all. But again, even if there had been any sort of Rule 32 violation here, it is subject to review for harmlessness, and there simply was no error here that would require reversal. Unless there are further questions on that topic, I would like to briefly address the ransom demand argument that the defendant makes. As Romero concedes, that argument is on review for plain error, and a defendant cannot make a showing of plain error, cannot show that there is a clear and obvious error, unless he can point to binding precedent or demonstrate that his construction of the guideline is compelled by the language of the guideline itself. Now, Romero relies on the Seventh Circuit's decision in Reynolds to suggest that his read of the guideline is the obvious one and the only obvious one. But I would note that I think the mere level of analysis that the Seventh Circuit engages in, in that case, in and of itself, suggests that the answer is far less clear than Romero would have it. I would also note that in the government's view, the Seventh Circuit in sua sponte adopting a third-party requirement got it wrong. And Your Honors touched on a few of the rationale that the court there offered in support of its reading of the statute. To focus on one, the Seventh Circuit there pointed to what it called the ordinary understanding of the meaning of the word ransom to reject the dictionary definition, which doesn't include a third-party requirement. But it's frankly hard to know what to make of this argument, because while ransom often involves a third party, it doesn't necessarily have to. If the kidnapper takes the victim to the ATM and demands that the victim withdraw money, that doesn't somehow convert the demand for money into something other than a ransom demand. Is there any case ever treating that as a ransom? It sounds like a robbery. Well, I think it isn't a robbery precisely because you have a captured person in the case of a kidnapping. Well, anyone who's detained is presumably captured. They're not free to leave. It may be momentarily, assuming they escape it alive, but a robbery always involves some level of halt to the liberty of the person while they're getting money or whatever. I think that's probably correct. But I would note here that at several junctures in his own brief, Romero refers to what happened here as ransom, which I think just goes to show that the common understanding of the word ransom doesn't necessarily involve a third party. What are you relying on for that proposition besides his own brief? Are there statutes making it a crime to engage in ransom or demand a ransom? That defined it separate from robbery? Well, again, I think the distinction between robbery and kidnapping is the idea— Judge Barron's question. I'm sorry? Judge Ansel, please answer Judge Barron's question. I'm sorry, Judge Barron. I think, as Judge Thompson's pointing out, this is an unusual statute. The drafters of this statute thought the word ransom was significant. So they identified that particular word among all words, various other things that could describe behavior of acquiring money from a victim. And they acquired money after capturing a victim. And they used the word ransom. So I'm just wondering, is there any legal authority we could look to? A case, a statute in which any jurisdiction has ever sought to criminalize conduct called it ransom, and the conduct involved capturing someone and asking that person for the money. There is, in fact, various authority contrary to what the Seventh Circuit says. United States v. Andrews, United States v. DiGiorgio, so on, essentially cases I've identified based on a cursory search from the Second, Fourth, Fifth, and Eleventh Circuits. Are those in your brief, Counselor? Are those cases cited in your brief? I would be happy to submit them in the form of a 28-J letter. We did not cite them in the brief precisely because the defendant's argument fails for the simple reason that we are on plain error analysis here. All right. Please submit a 28-J. Yeah, that would be helpful. Will do. Okay. Thank you. Five days. Can you do it in five days? I'm sorry, Your Honor? Is five days enough time for you? Yes, of course. Thank you.